

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DIEZ OIL COMPANY, INC.

VERSUS

EXXON MOBIL CORPORATION

CIVIL ACTION

NO. 08-316

## RULING ON MOTION FOR SUMMARY JUDGMENT

Before the court is defendant's, Exxon Mobil Corporation ("Exxon"), motion for summary judgment (doc. 16). Plaintiff, Diez Oil Company, Inc. ("Diez"), has filed a response (doc. 18). Exxon has filed a reply (doc. 19). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. Oral argument with respect to this motion is not necessary.

## Background

On August 1, 1966, Mobil Oil Company ("Exxon") entered into a contract with Ernest Stephen in which Mobil agreed to lend Stephen, among other things, two 1000 gallon underground storage tanks ("USTs").[1] The tanks were installed on property owned by Stephen. In May of 1986, a Registration for Underground Storage Tanks was filed with the Louisiana Department of Environmental Quality ("LDEQ") reflecting that the owner of the USTs was Diez.[2] On January 10, 2005, the LDEQ issued a Compliance Order to Diez.[3] In the Compliance Order, the LDEQ found as fact that Diez

---

[1] The contract indicates that Mobile retained ownership of the USTs. *See* Doc. 16-5, Ex. A. In its memorandum in support of summary judgment, Exxon asserts that this contract terminated in 1992. Doc. 16-3, page 2. In a letter from Mr. Diez to the Louisiana Department of Environmental Quality, Mr. Diez also notes that the contract between Mobile and Stephen terminated in 1992. Doc. 1-4, Ex. A. However, as Mr. Diez correctly points out in his opposition to plaintiff's motion for summary judgment, Exxon "has not provided any written evidence that the contract was terminated..." Doc. 18, page 2.

[2] Doc. 16-5, Ex. B. This registration appears to have been signed by Mr. Diez, who is, according to Exxon and the 19th JDC's January 29, 2008 judgment, the incorporator and sole shareholder of Diez Oil Company.

[3] Doc. 16-5, Ex. C.

"owns and/or operates two (2) underground storage tanks (USTs)…[at] the facility known as Stephen's Grocery…." and that Diez "failed to permanently close the USTs that were in temporary closure for more than 12 months…"[4] in violation of Louisiana environmental regulations.[5] The Compliance Order ordered Diez to permanently close the two tanks. The Compliance Order further stated that Diez had the "right to an adjudicatory hearing on a disputed issue of material fact or law arising from this Compliance Order" and that Diez had thirty days from receipt of the Compliance Order to request such a hearing.[6]

Diez failed to request a hearing, instead sending a letter to the LDEQ dated April 14, 2005 denying ownership of the USTs.[7] The LDEQ responded by letter dated August 1, 2005 that the Registration indicated the tanks were indeed owned by Diez and "absent any proof to the contrary…Diez Oil Company is the owner of the underground storage tanks…."[8] It does not appear from the record that Diez took any further action to dispute LDEQ's determination of ownership. Diez failed to comply with the Order, and LDEQ filed suit against Diez in the 19th Judicial District Court for the Parish of East Baton Rouge ("19th JDC").[9] On January 5, 2006, the 19th JDC issued a judgment making the provisions of the Compliance Order executory.[10] Diez did not appeal from or comply with this judgment and on December 4, 2007, the 19th JDC held Diez in

---

[4] *Id.*

[5] *See* 33 La ADC XI § 903C.

[6] *Id.* La. R.S. 30:2050.4(A) states in part that the "respondent has the right to an adjudicatory hearing on a disputed issue of material fact or of law arising from a compliance order or a penalty assessment." The request for an adjudicatory hearing must be filed within thirty days after receipt of notice of the compliance order. La. R.S. 30:2050.4(E).

[7] Doc. 1-4, Ex. A.

[8] Doc. 1-4, Ex. B.

[9] According to LA R.S. 30:2050.2(C), "[t]he compliance order becomes a final enforcement action when the period of time for filing a request for an adjudicatory hearing lapses without a request being filed."

[10] Doc. 16-5, Ex. E.

contempt and ordered it to carry out the terms of the Compliance Order made executory.[11] Diez still did not comply with the Compliance Order and on January 29, 2008 was fined and a hearing was set for April 14, 2008 in which Diez was ordered to appear and show cause why its incorporator and sole shareholder, Levy Diez, Jr., should not be punished for contempt by three months imprisonment.[12] On April 11, 2008, Diez filed a state court action against Exxon seeking a declaratory judgment that Exxon was the proper party to comply with the LDEQ's order. Diez alleges that "on several occasions, [it] has presented evidence to DEQ which is sufficient to disavow ownership of the subject UST's and establish that Mobil [Exxon] is the actual owner of the UST's."[13] The action was removed to this Court on May 23, 2008.

## Analysis

Exxon argues that Diez's suit is an untimely collateral attack on the LDEQ's order.[14]   To be sure, plaintiff did not avail itself of procedures it could have used to oppose LDEQ's factual finding that it owned the USTs. The Compliance Order stated that Diez had the statutory right to dispute an issue of material fact or law arising from the Order by requesting an adjudicatory hearing within thirty days of receipt of the Order.[15] Further, the Compliance Order stated that it would become a final enforcement action unless Diez made a timely request for an adjudicatory hearing. Diez failed to request such a hearing and then failed to appeal the judgment of the 19th JDC making

---

[11] Doc. 16-5, Ex. F.
[12] Doc. 16-5, Ex. G.
[13] Doc. 1-4, Ex. C, page 4.
[14] The Fifth Circuit has explained that "a collateral attack is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it, that is, in another proceeding on a separate cause of action." Health Nut, Inc. v. Wooley, 534 F.3d 487, 493 n. 1 (5th Cir. 2008). "Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir. 1972).
[15] Doc. 16-5, page 8.

the Compliance Order executory. Exxon asserts in its memorandum in support of summary judgment that Diez argued in its brief opposing contempt that it was not the owner of the tanks.[16] Diez does not dispute this assertion; however, neither the briefs submitted to the 19th JDC regarding contempt nor a transcript of the contempt proceeding have been submitted to this Court. Thus, this Court cannot independently determine the extent to which Diez argued the ownership issue. Diez did not appeal the 19th JDC's judgment holding it in contempt. Instead, Diez now seeks a declaratory judgment from this Court to the effect that Exxon, rather than Diez, is the owner of the tanks and that compliance with the LDEQ's Order should fall to Exxon.

Diez offers no explanation for its failure to request an adjudicatory hearing or appeal the judgment of the 19th JDC. Instead, Diez asserts that "in bringing this action [it] is not seeking a ruling from this Honorable Court either upholding or striking down the compliance order " and that it "is seeking no such review on the underlying merits of the compliance order…"[17] We agree with Exxon and find Diez's assertions disingenuous. In order to grant the relief requested by Diez (a finding that an entity other than itself is the owner of the USTs), this Court would have to overturn the LDEQ's finding of fact that Diez is the owner of the USTs and responsible for compliance with the LDEQ's order. As defendant states, "by asking this Court to substitute one party in place of another in the LDEQ Compliance Order, plaintiff is expressly attacking the merits of the LDEQ Compliance Order."[18] Although Diez may not be challenging the LDEQ's legal conclusion that the USTs violate the Louisiana Administrative Code's

---

[16] Doc. 16-3, page 3.
[17] Doc. 18, page 4.
[18] Doc. 19, page 4.

regulations for underground storage tanks, it is challenging the LDEQ's factual finding of ownership.

When Diez failed to request an adjudicatory hearing within the statutory time period, the Compliance Order became a "final enforcement action."[19] Under La R.S. 30:2050.21(A), "[a]n aggrieved person may appeal devolutively…a final enforcement action…*only* to the Nineteenth Judicial District Court."[20] "Any party aggrieved by a final judgment or interlocutory order or ruling of the Nineteenth Judicial District Court may appeal or seek review thereof, as the case may be, to the Court of Appeal, First Circuit."[21] Clearly, an extensive procedure exists by which Diez could have challenged the LDEQ's determination of ownership of the USTs. As Diez failed to make use of the procedure, this Court will not now allow him to challenge the LDEQ's determination of ownership outside of that procedure.[22] Based on plaintiff's failure to use the proper procedure, this Court will grant Exxon's motion for summary judgment.

---

[19] Under La R.S. 30:2050.4, Diez had thirty days from receipt of notice of the Compliance Order to request an adjudicatory hearing in which it could dispute a material fact arising from the Order. A compliance order becomes a final enforcement action when the period of time for requesting a hearing passes without request. La. R.S. 30:2050.2. The obligations imposed by a compliance order are enforceable when the order becomes a final enforcement action. La. R.S. 30:2050.5. A final enforcement action may be appealed devolutively to the 19th JDC within 30 days after notice of the action has been given. La. R.S. 30:2050.21. While this thirty day period does not begin to run without notice, Diez makes no assertion that it failed to receive the necessary notice. La. R.S. 30:2050.23.

[20] Emphasis added.

[21] La. R.S. 30:2050.31.

[22] Based on this extensive procedure and Diez's failure to make use of it, this Court also finds Diez's argument regarding unjust enrichment to have no weight. A cause of action for unjust enrichment exists when "the plaintiff has no other remedy at law." Carriere v. Bank of Louisiana, 702 So.2d 648, 657 (La. 1996). Here, Diez could have challenged the LDEQ's ownership determination through the procedure outlined above, yet it failed to do so. Although Diez may well be correct that "there is no other remedy available by which [it] can *now* avoid unjustly enriching" defendant, the theoretical basis for unjust enrichment is that the remedy should be "used to fill a gap in the law where no express remedy is provided." Doc. 18, page 5 (emphasis added); Slocum v. Daigre, 424 So.2d 1074, 1076 (La. App. 3d Cir. 1983) (quoting Edmonston v. A-Second Mortgage Company of Slidell, 289 So.2d 116 (La. 1974)). Here, a remedy exists, the problem is that Diez failed to make use of it.

Additionally, while this Court does not base this holding on it, Exxon is correct that under Louisiana Civil Code article 493.1 it is not the owner of the USTs. Exxon asserts that the USTs are component parts under article 465:

> Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts.

Exxon refers this Court to *Central Oil Supply Corporation v. Wilson Oil Company, Inc.*,[23] in which the court cited articles 465 and 466 and held that USTs "had become permanently attached to the land thereby becoming a component part...."[24] Louisiana Civil Code article 493.1 governs ownership of things determined to be component parts under article 465:

> Things incorporated in or attached to an immovable so as to become its component parts under Articles 465 and 466 belong to the owner of the ground.

Exxon is not the owner of the ground, thus it argues that it is not owner of the USTs. Diez counters that 493.1 confers ownership of the component part to the owner of the ground only when the thing is a component part under *both* article 465 and 466. Diez presents no support for this assertion. Further, this Court agrees with Exxon that "courts have not required both articles to be satisfied."[25] This Court finds *Central Oil* controlling and thus article 493.1 applicable to the question of ownership.[26] As Exxon is not the owner of the ground, it is not the owner of the USTs.

---

[23] 511 So2d 19 (La. App. 3 Cir. 1987).

[24] *Id.* at 21.

[25] Doc. 19, page 5. Exxon cites *In re Chase Manhattan Leasing Corp.*, 626 So.2d 433, 434 (La. App. 4 Cir., Oct. 28, 1993) (determining ownership under Louisiana Civil Code article 493.1 of an article 466 component part.).

[26] The Court has also considered the possible application of Louisiana civil code article 463, which states in pertinent part that "other constructions permanently attached to the ground...are component parts of a tract of land when they belong to the owner of the ground." The USTs could arguably be classified under article 463. *See* Bayou Fleet Partnership v. Dravo Basic Materials Co., 106 F.3d 691, 693 (5th Cir. 1997) ("Louisiana courts have found 'other constructions' to include a cistern, corn mill, *gas tank*, barbed wire fence, outdoor advertising sign,

**Conclusion**

Based on plaintiff's failure to make use of the appropriate procedure to challenge LDEQ's factual findings, the defendant's motion for summary judgment is GRANTED (doc. 16).  Plaintiff's claims against defendant are hereby dismissed.


Signed in Baton Rouge, Louisiana, on April 27, 2009.


JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

and a railroad track.") (emphasis added). Is so classified, then separate ownership of the UST could be possible under Louisiana Civil Code article 491. Under article 491, an "other construction permanently attached to the ground" is presumed to belong to the owner of the ground; however, that presumption can be rebutted by evidence of "an instrument filed for registry in the conveyance records of the parish in which the immovable is located." La. CC art. 491. A contract entered into between Stephen and Exxon states that Exxon remained owner of the USTs. Without producing any evidence, Exxon asserts that the contract terminated in 1992. Further, no party has submitted evidence that the contract was filed. Therefore, if the USTs were classified as "other constructions," it appears that ownership of the USTs would be presumed to lie with the owner of the ground. Under either classification then, Exxon would not be the owner of the USTs.